UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

WHIRLPOOL CORPORATION,                          Case No.
a Delaware corporation,
    Plaintiff,                                  Hon.

v.

CONSUMER PRIORITY SERVICE, a New York
Corporation; STEVE KATZ, individual; and
ELIJAHU SAADA, individual,
    Defendants.

## VERIFIED COMPLAINT SEEKING INJUNCTIVE AND MONETARY RELIEF

Plaintiff, Whirlpool Corporation ("**Whirlpool**"), complains of all Defendants as follows:

### INTRODUCTION

1.    This is a complaint seeking to enjoin and recoup Whirlpool's losses arising out of Consumer Priority Service's (**"CPS"**) and its representatives' impersonation of Whirlpool customers in need of out-of-warranty service for the purpose of misleading Whirlpool into providing free parts, labor, and/or replacement appliances to what Whirlpool believed to be Whirlpool clients but which – in reality – was CPS.

2.    CPS absconded with the free parts, labor, and/or appliances from Whirlpool and converted them for CPS's – not Whirlpool's – benefit, namely, to fulfill CPS service and repair obligations under extended service contracts CPS sold to the owners of the Whirlpool brand appliances, which now require service not covered by any Whirlpool warranty.

3.    Whirlpool therefore files this action to seek an order enjoining CPS and its representatives from continuing to employ such misrepresentations and false pretenses to obtain such parts, labor, and replacement appliances from Whirlpool and convert them to their own use.

## PARTIES, JURISDICTION, AND VENUE

4.     Plaintiff Whirlpool is a Delaware corporation with its principal place of business located in Berrien County, Michigan.

5.     CPS is incorporated in the State of New York and, upon information and belief, maintains its principal executive office at 24 Commerce St., Suite 612, Newark, New Jersey 07102.

6.     Defendant Steve Katz is a former Service Manager at CPS, who resides at 10220 67th Drive, Forest Hills, NY 11375.

7.     Defendant Elijahu Saada is CPS's Director of Customer Service, who resides in Oakhurst, New Jersey 07755.

8.     At relevant times, Defendants Katz and Saada supervised and directed the department at CPS carrying out the fraudulent practices that are the subject of this Complaint.

9.     Whirlpool manufactures and sells home appliances to its customers with a written warranty. Whirlpool markets appliances for sale under its Whirlpool brand, as well as other brands owned by Whirlpool, including Maytag, KitchenAid, Jenn-Air, and Amana. References to "**Whirlpool appliances**" in this Complaint include all appliance brands owned and sold by Whirlpool; and the written warranties provided on those appliances are referred to here as "**Whirlpool's warranty**."

10.     To efficiently provide the service and repair required under Whirlpool's warranty across the United States, Whirlpool enters into agreements with third-party service companies, which act as independent contractors and are expected to be the exclusive providers of service and repair under Whirlpool's warranty. These companies are referred to here as Whirlpool's Independent Service Contractors (**"Whirlpool's ISC or ISCs"**).

11.     CPS sells extended service contracts to consumers buying Whirlpool appliances under which CPS is obligated to provide certain, contract-defined repair and replacement of the subject appliances after the expiration of the Whirlpool warranty.

12.     Upon information and belief, CPS contracts with third-party contractors across the United States to handle and perform the repair and replacement of Whirlpool appliances required under CPS-issued extended service contracts.

13.     CPS's network of third-party contractors includes service companies that are located and that handle service calls on CPS's behalf within Michigan.  That includes service companies located in and handling service calls for CPS within this judicial district.

14.     CPS not only directs communications to its third-party contractors in Michigan to initiate that contractor's handling of a particular repair or replacement for a CPS customer but also issues payment (in the form of check or wire) to its third-party contractors in Michigan for completing the assigned service call.

15.     It has now come to light that CPS, by and through its representatives, has placed hundreds of calls, to date, to Whirlpool's customer service call centers impersonating Whirlpool customers, many of which were routed to and handled by Whirlpool employees located in Benton Harbor, Michigan.

16.     When such calls were routed to Benton Harbor, Michigan for handling, the Whirlpool customer service representative answering the call notified the CPS caller that he/she was talking with a Whirlpool representative located in Michigan and, in some instances, the specific location of Benton Harbor, Michigan.

17.     This Court has jurisdiction of this lawsuit pursuant to 28 U.S.C. § 1332, as there is (a) more than $75,000 in controversy (exclusive of interest and costs) and (b) complete diversity of citizenship between Whirlpool, as the Plaintiff, and all of the Defendants.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Whirlpool's claim occurred in this Court's judicial district.

## BACKGROUND

19.     Some of the third-party contractors hired by CPS to provide service and repairs on out-of-warranty Whirlpool appliances are also Whirlpool ISCs.

20.     In or around April of 2015, Whirlpool began receiving reports from Whirlpool ISCs hired by CPS that CPS representatives were calling Whirlpool's customer service call centers and misrepresenting to Whirlpool that they were Whirlpool customers whose appliances needed service and repair no longer covered by Whirlpool's warranty

21.     When Whirlpool asks the CPS caller to provide or confirm his/her identity at the outset of such calls, the CPS caller provides the name of or misrepresents his identity as being the person who owns the Whirlpool appliance needing service.

22.     The CPS caller then goes on to provide information, such as the subject appliance's model and serial numbers, the purchase date for the appliance, and/or the Whirlpool customer's phone number, address, or other contact information, to deceive the Whirlpool customer service representative into believing that the person calling for Whirlpool's assistance is the actual owner of the appliance needing service.

23.     In addition, the CPS caller takes steps to conceal his/her identity and makes further misrepresentations to avoid Whirlpool's discovery that it is not dealing with the actual owner of the Whirlpool appliance. That includes, but is not limited to, the following scenarios:

- When asked to provide identifying information, such as the caller's phone number, address, appliance model or serial number, the CPS caller responds by providing Whirlpool with the appliance owner's – not the caller's – information.

- When Whirlpool suggests troubleshooting issues with the Whirlpool appliance over the phone, the CPS caller says that he/she has already completed

troubleshooting the appliance, and/or cannot – for one reason or another – troubleshoot the appliance at that time; and

- The CPS caller talks in first person as the appliance owner on these calls. That includes the CPS caller – impersonating the appliance owner – describing to Whirlpool the issues with the subject appliance, prior service calls on the appliance, and/or dissatisfaction with the appliance and/or Whirlpool customer service as though he/she personally experienced or felt these things.

24.     On many of these calls, the CPS caller further denies that any extended service contracts or other coverage exists to cover the required repair or replacement of the subject Whirlpool appliance, despite knowing that CPS-issued extended service contracts covered the subject appliance and obligated CPS to make the needed repair or replacement.

25.     Relying on the above-described misrepresentations and false pretenses, and believing it was assisting the actual owners of the Whirlpool appliances needing out-of-warranty service, Whirlpool has provided free parts, labor and appliances for the benefit of CPS, including replacement parts and/or labor free of charge to complete the required repair of the subject appliances or, if necessary to replace the appliances, with free or discounted replacement appliances.

26.     Whirlpool provided these free parts, labor, and/or appliances although Whirlpool had no obligation – under Whirlpool's warranty or otherwise – to provide such items to its customers and only did so under the false and mistaken belief that it was helping out and creating goodwill with Whirlpool appliance owners and customers.

27.     It is now known that, upon receipt of the wrongfully and fraudulently obtained parts, labor and/or replacement appliances, CPS and its representatives absconded with these Whirlpool provided items and directing their conversion for CPS's sole benefit.

28.     As a result, Whirlpool has incurred losses in excess of $75,000, for the parts, labor, and appliances it was deceived into providing to CPS, for its costs to ship such parts and appliances, and the significant expenses Whirlpool has incurred fielding, handling, and investigating these improper and fraudulent calls from CPS and its representatives. That includes, for example, Whirlpool customer service representatives spending an average of 2 hours a day in June and July of this year fielding more than 300 such calls from CPS and its representatives; and Whirlpool's review, to date, of more than 105 recorded calls from CPS.

29.     The chart attached here as **Exhibit 1**, and expressly incorporated into this Complaint by reference, provides specific examples of instances when CPS, through its representatives, impersonated Whirlpool customers and used other false pretenses to abscond with Whirlpool provided parts, labor, and/or replacement appliances.

### COUNT I - FRAUD

30.     Whirlpool incorporates by reference the allegations in all previous paragraphs.

31.     CPS and its representatives have made hundreds of calls to Whirlpool under the guise of being a Whirlpool customer needing service for a Whirlpool appliance which has no other coverage – under Whirlpool's warranty or a CPS-issued extended service contract – for the required repair or replacement.

32.     It is now known that CPS representatives – not Whirlpool's customers – made these calls and that a CPS extended service contract did, in fact, cover and obligate CPS to handle the needed service on the appliance.

33.     CPS and its representatives made these calls to Whirlpool with the intent of leading Whirlpool to believe it was helping out and creating goodwill with its customers by providing free parts, labor, and/or replacement units on out-of-warranty Whirlpool appliances, when – in reality –CPS benefitted and made off with the parts and labor concessions made by Whirlpool.

34.     Relying on these false pretenses created by CPS and its representatives, Whirlpool provided free parts, labor, and/or replacement units, which were not requested of Whirlpool by its customers and which CPS had an obligation to provide.

35.     Whirlpool had no reason to know of CPS's fraudulent scheme and otherwise reasonably relied on CPS's misrepresentations in providing free parts, labor, and appliances to persons Whirlpool believed to be Whirlpool customers.

36.     Whirlpool suffered damages in excess of $75,000, which includes, but may not be limited to, the value of the parts, labor, and appliances CPS fraudulently obtained from Whirlpool, Whirlpool's costs incurred to ship such parts and appliances, as well as the costs and resources Whirlpool incurred in handling, investigating, and pursuing reimbursement of these fraudulent claims by CPS.

37.     As Defendants Katz and Saada knew of, knowingly acquiesced in, and participated in such fraudulent practices by CPS representatives (many of whom reported to Defendants Katz and Saada), they are personally liable for the damages Whirlpool incurred for the parts, labor, and appliances that each fraudulently obtained or helped to fraudulently obtain from Whirlpool.

38.     If CPS continues with these fraudulently practices, Whirlpool's goodwill and reputation with its customers will be irreparably harmed.

WHEREFORE, Whirlpool requests that this Court:

A.  Enter an order enjoining CPS and its representatives, including Defendants Katz and Saada, from continuing to impersonate Whirlpool customers and use any of the above described fraudulent practices to obtain parts, labor, and/or replacement appliances from Whirlpool.

B.  Permit all parties to engage in expedited discovery, including depositions and subpoenas duce tecum, in anticipation of an evidentiary hearing on Whirlpool's requested injunctive relief.

C.  Enter a judgment against Defendants in favor of Whirlpool in an amount in excess of $75,000, plus interest.

D.  Award Whirlpool its costs and attorneys' fees.

E.  Grant any other relief that this Court finds just and equitable.

## COUNT II – NEGLIGENT MISREPRESENTATION

39.   Whirlpool incorporates by reference the allegations in all previous paragraphs.

40.   CPS and its representatives were negligent in making misrepresentations to Whirlpool that they were the owners of the Whirlpool appliance needing service, and that the subject appliances were not covered by any CPS-issued extended service contract.

41.   Since CPS's calls were directed to Whirlpool's customer service call centers, CPS and its representatives knew that Whirlpool would be the recipient of such calls and rely on such misrepresentations by CPS in deciding to provide free parts, labor, and appliances for the service of the subject appliance.

42.   Relying on such false pretenses and misrepresentations from CPS and its representatives, Whirlpool provided parts, labor, and appliances to what Whirlpool believed to be its customer but – in reality – was CPS.

43.   The Whirlpool provided parts, labor, and appliances were then used for the sole benefit of CPS and its representatives, including Defendants Katz and Saada, namely, to fulfill CPS's extended service contract obligations.

44.   As a result, Whirlpool has suffered damages in excess of $75,000, representing the value of the parts, labor, and appliances CPS made off with, the significant expense and resources Whirlpool has incurred handling CPS calls and investigating CPS fraudulent practices, and any loss of goodwill that Whirlpool experienced with its customers.

45. As Defendants Katz and Saada knew of, knowingly acquiesced in, and participated in such fraudulent practices by CPS representatives (many of whom reported to Defendants Katz and Saada), they are personally liable for the damages incurred by Whirlpool for the parts, labor, and appliances that each fraudulently obtained or helped to fraudulently obtain from Whirlpool.

46. If CPS continues with such negligent misrepresentation tactics, Whirlpool's goodwill and reputation with its customers will be irreparably harmed.

WHEREFORE, Whirlpool requests that this Court:

    A. Enter an order enjoining CPS and its representatives, including Defendants Katz and Saada, from continuing to impersonate Whirlpool customers and use any of the above described fraudulent practices to obtain parts, labor, and/or replacement appliances from Whirlpool.

    B. Permit all parties to engage in expedited discovery, including depositions and subpoenas duce tecum, in anticipation of an evidentiary hearing on Whirlpool's requested injunctive relief.

    C. Enter a judgment against Defendants in favor of Whirlpool in an amount in excess of $75,000, plus interest.

    D. Award Whirlpool its costs and attorneys' fees.

    E. Grant any other relief that this Court finds just and equitable.

### COUNT III – CONVERSION
### (COMMON LAW AND STATUTORY CONVERSION)

47. Whirlpool incorporates by reference the allegations in all previous paragraphs.

48. CPS and its representatives knowingly used false pretenses to take control of Whirlpool parts and appliances.

49.     CPS then used those wrongfully obtained parts and appliances for CPS's own – not Whirlpool's – benefit in order to fulfill obligations CPS had to service and repair Whirlpool appliances owned by others.

50.     CPS never paid Whirlpool for or had any authority to exert control or possession over the parts and appliances that Whirlpool, under false pretenses, provided to CPS's service contractors or CPS's customers in order to fulfill CPS's repair or replacement obligations on Whirlpool appliances.

51.     Whirlpool has therefore suffered damages equivalent to the value of the parts and appliances that CPS and its representatives converted for their own benefit, Whirlpool's costs to ship such parts and appliances, as well as Whirlpool's costs to handle and investigate such CPS practices.

52.     As Defendants Katz and Saada knew of, knowingly acquiesced in, and participated in such fraudulent practices by CPS representatives under their supervision, they are personally liable for the damage incurred by Whirlpool for the parts and appliances that each converted, helped to convert, and concealed from Whirlpool.

53.     Since Defendants' conduct also violates Mich. Comp. Laws § 600.2919(a)(1), Whirlpool is entitled to treble damages, as well as the costs and attorney fees incurred by Whirlpool for having to pursue and file this litigation.

WHEREFORE, Whirlpool requests that this Court:

A.  Enter an order enjoining CPS and its representatives, including Defendants Katz and Saada, from continuing to impersonate Whirlpool customers and use any of the above described practices to obtain and convert parts, labor, and/or replacement appliances from Whirlpool.

B.  Permit all parties to engage in expedited discovery, including depositions and subpoenas duce tecum, in anticipation of an evidentiary hearing on Whirlpool's requested injunctive relief.

013808.135573 #13930091-1                                                     -10-

C.  Enter a judgment against Defendants in favor of Whirlpool in an amount in excess of $75,000, plus interest.

D.  Award Whirlpool additional damages under Mich. Comp. Laws § 600. 2919(a), including trebled damages, costs, and attorneys' fees.

E.  Grant any other relief that this Court finds just and equitable.

WARNER NORCROSS & JUDD LLP

Dated:  January 22, 2016

By: /s/Lance R. Zoerhof
    Lance R. Zoerhof (P63980)
    900 Fifth Third Center
    111 Lyon Street NW
    Grand Rapids, MI 49503-2487
    lzoerhof@wnj.com
    616.752.2000
    Attorneys for Plaintiff

**VERIFICATION**

I, Kenneth S. Tyson, as Service Network Sr. Analyst of Whirlpool Corporation, Plaintiff herein, being first duly sworn, depose and state that I have read the foregoing Verified Complaint Seeking Injunctive and Monetary Relief and verify that its contents are true and accurate to the best of my knowledge, information, and belief.

Subscribed and sworn to before me
on this ⁊ day of January, 2016.

Notary Public, Cobb County, GA
My commission expires:

-12-